IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

<pre>
                              *

UNITED STATES OF AMERICA,      *

                               *    CRIMINAL NO.:  WDQ-09-0169
        v.
                               *

GREGORY MUSSMACHER, *et al.*   *

*    *    *    *    *    *    *    *    *    *    *    *    *
</pre>

MEMORANDUM OPINION

On April 1, 2009, the grand jury indicted former Baltimore
City Police Officers Gregory Mussmacher, Guy Gerstel, and Wayne
Thompson.  Paper No. 1.  Mussmacher was charged with using
excessive force (Count 1) and making false statements in a
police report (Count 6); Gerstel was charged with using
excessive force (Count 2), making false statements to an FBI
agent (Count 3), and impeding a federal investigation (Count 4);
and Thompson was charged with impeding a federal investigation
(Count 5).  Pending are pretrial motions.[1]  A hearing was held on
May 12, 2010.

---

[1]  The defendants have moved to adopt co-defendant motions.
Paper No. 18, 20, 26.  The motions to adopt request procedural
(*i.e.*, permission to adopt the co-defendant's motion) and
substantive (*i.e.*, the relief sought by the co-defendant's
motion) relief.  The procedural relief requested in all the
motions to adopt will be granted.  When the substantive relief
sought in a motion to adopt is denied, the motion will be
GRANTED IN PART and DENIED IN PART.

I.   General Background

On April 27, 2004 around 3:00 a.m., the police received a
911 call, from Benjamin Rowland's home, that he was intoxicated
and violent.  Rowland left the house before the police arrived.
Around 3:20 a.m., he was confronted by officers on a street
corner several blocks from his home.[2]  Rowland was arrested by
Mussmacher and taken to the police station for booking.

The Government alleges that, at the police station,
Mussmacher struck Rowland in the face with his baton, and
Gerstel hit Rowland with a pool cue.  Mussmacher states that he
used force only after Rowland left his seat to approach him,
spat at him, and began to fight.  Paper No. 31 at 2.  Rowland
denies this and says that he was not aggressive or
confrontational but merely sitting in his chair when the
officers used force against him.  *Id.*

The State of Maryland charged Mussmacher in Baltimore City
Circuit Court for using excessive force during and after
Rowland's arrest.  At trial, Mussmacher was convicted on some
charges.  The Court of Special Appeals reversed, vacated the

---

[2]  The indictment charges that Officer Mussmacher handed his
weapon and police badge to another officer, unlocked Rowland's
handcuffs, and challenged him to a fight.  When Rowland declined
the challenge, Officer Mussmacher sprayed Rowland with pepper
spray.

conviction, and remanded to the circuit court.  On remand, the
Baltimore City State's Attorney's Office declined to retry
Mussmacher.

On April 1, 2009, the federal grand jury indicted Officer
Mussmacher and two other Baltimore City Police officers, Gerstel
and Thompson.  Paper No. 1.  On April 24, 2009, the Defendants
pled not guilty.  Paper Nos. 10, 11, 12.

## II.  The Defendants' Motions to Sever

Each Defendant has moved to sever on multiple grounds.
Paper Nos. 16, 19, 21, 75.  All contend that the counts are
unrelated and were improperly joined in the Indictment.  Paper
No. 16 at 1-2; Paper No. 19 at 1-2; Paper No. 21 ¶¶ 1-4.
Gerstel and Mussmacher argue for severance because their
defenses conflict.  Paper No. 21 ¶ 5; Paper No. 75 at 4-6.
Gerstel and Thompson argue for severance because each seeks the
other's exculpatory testimony, but neither will testify in a
joint trial.  Paper No. 16 at 4; Paper No. 19 at 2.  Gerstel
also contends that severance is required because the Government
may admit statements by Mussmacher--who is unlikely to testify
at trial and be cross-examined--that implicate Gerstel in the
assault on Rowland.  Paper No. 75 at 2-3.

### A.   Improper Joinder

Fed. R. Crim. P. 8(a) permits joinder of offenses that are
"logical[ly] relat[ed]."  *United States v. Cardwell*, 433 F.3d

378, 385 (4th Cir. 2005). *See also* Fed. R. Crim. P. 8(a),

*United States v. Hirschfeld*, 964 F.2d 318, 323 (4th Cir. 1992).

Under Fed. R. Crim. P. 8(b), defendants may be charged in the

same indictment "if they are alleged to have participated in the

same act or transaction, or in the same series of acts or

transactions constituting an offense or offenses."  Unless a

"miscarriage of justice" will result, there is a presumption

that co-defendants should and will be tried together.

*Richardson v. Marsh*, 481 U.S. 200, 206-11 (1987).[3]

     Here, there is a logical relationship among the claims

against Mussmacher, Gerstel, and Thompson.  All the counts

relate to Rowland's arrest and alleged mistreatment on April 27,

2004 and subsequent misstatements about that incident.  The

joinder of charges for obstruction of justice by concealing an

offense with charges for the offense is appropriate.  *See*

*Carmichael*, 685 F.2d at 910.  Joinder was proper under Rule 8.

     B.   Conflicting and Antagonistic Defenses

     Fed. R. Crim. P. 14 permits severance "[i]f the joinder of

offenses or defendants in an indictment . . . appears to

---

[3]  To "promote efficiency and serve the interest of justice by
avoiding the scandal and inequity of inconsistent verdicts," the
federal system prefers joint trials for defendants who are
indicted together.  *Zafiro v. United States*, 506 U.S. 534, 537
(1993)(internal quotation omitted).  *See also United States v.*
*Strickland*, 245 F.3d 368, 384 (4th Cir. 2001)("Generally,
individuals indicted together should be tried together.")

prejudice a defendant or the government[.]" Fed. R. Crim. P. 14(a). "[A] certain amount of conflict among defendants is inherent in most multi-defendant trials." *United States v. Smith*, 44 F.3d 1259, 1267 (4th Cir. 1996). "Speculative allegations" of conflicting or antagonistic defenses, hostility among defendants, or the desire of one defendant to exculpate himself by inculpating another is an insufficient ground for separate trials." *United States v. Najjar*, 300 F.3d 466, 473-74 (4th Cir. 2002). (*quoting United States v. Spitler*, 800 F.2d 1267, 1271 (4th Cir. 1986)). Severance is required if "there is a serious risk that a joint trial would compromise a specific trial right" of a defendant, or "prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539.[4]

Mussmacher and Gerstel contend that their defenses conflict. Paper No. 21 ¶ 6; Paper No. 75 at 4-6.[5] Mussmacher

---

[4] Defendants should be severed when their defenses are in such stark contrast "that the jury is presented with the proposition that to believe the core of one defense it must disbelieve the core of the other . . . or 'that the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty.'" *Najjar*, 300 F.3d at 474 (*quoting Becker*, 585 F.2d at 707).

[5] Mussmacher also speculates that "prejudicial spillover" from the counts against his co-defendants is likely to taint his defense. He has not shown a serious risk that the jury will be unable to make a reliable judgment about his guilt or innocence, and he has not identified a trial right that would be compromised by a joint trial.

believes that Gerstel will raise Mussmacher's state conviction

for hitting Rowland with a pool cue because Count 2 charges

Gerstel with that conduct.  Mussmacher argues that his defense

would be prejudiced by evidence of that conviction, which was

reversed on appeal.[6]

That "evidence properly admissible against one defendant

[would] have . . . a derogatory effect on some other defendant

against whom the same evidence [is] not admi[ssible]" does not

require severance.  *United States v. Frazier*, 394 F.2d 258, 261

(4th Cir. 1968).  A limiting instruction may restrict the jury's

use of evidence to the proper purpose.  *Id*.  Prejudice against

Mussmacher from evidence of his state court conviction may be

mitigated by (1) a proper limiting instruction, (2) evidence

that the conviction was reversed, and (3) evidence that

Mussmacher was not re-indicted for the same offense.[7]

Gerstel contends that Mussmacher's defense is antagonistic

to his because Mussmacher "has made numerous and inconsistent

statements regarding the assault of Ro[w]land" while Gerstel has

consistently denied using any force against Rowland.  Paper No.

75 at 4-6.  Gerstel's defense that he used no force against

---

[6]  The relevance of this evidence to the charges against Gerstel
is unclear.

[7]  The Indictment charges Mussmacher with striking Rowland in the
face with a baton and not on the back with a pool cue.  *See*
Paper No. 1 at 2-3.

Rowland is not antagonistic to Mussmacher's defense that he used only necessary force against Rowland.  Should *evidence* antagonistic to Gerstel's defense be admitted against Mussmacher, the Court would instruct the jury on the proper use of that evidence.[8]

Because these defenses involve mere "finger pointing" between Gerstel and Mussmacher, severance is not required.  *See Najjar*, 300 F.3d at 474.

C.   Need for Co-Defendant's Testimony

A defendant who requests severance "based on the asserted need for a co-defendant's testimony" must show: (1) a *bona fide* need for that testimony, (2) the likelihood that the co-defendant would testify and waive his Fifth Amendment privilege at a second trial, (3) the substance of his co-defendant's testimony, and (4) the exculpatory nature and effect of such testimony.  *United States v. Reavis*, 48 F.3d 763, 767 (4th Cir. 1995) (*citing United States v. Parodi*, 703 F.2d 768, 779 (4th Cir. 1983)).  If such a showing is made, the court will "(1) examine the significance of the testimony in relation to the defendant's theory of defense; (2) assess the extent of prejudice caused by the absence of the testimony; (3) pay close

---

[8]  *See Frazier*, 394 F.2d at 261 (severance unnecessary when "it [was] not so much that the defenses were antagonistic to each other as it [was] that the evidence was antagonistic to those defenses").

attention to judicial administration and economy; (4) give weight to the timeliness of the motion; and (5) consider the likelihood that the co-defendant's testimony could be impeached." *Parodi*, 703 F.2d at 779. A motion for severance may not be used as "a simple alibi-swapping device." *Parodi*, 703 F.2d at 780 (*citing United States v. Frazier*, 394 F.2d 258, 261 (4th Cir. 1968)).

Gerstel and Thompson have asserted that, if their cases are severed, each will offer exculpatory testimony at the other's trial. Paper No. 16 at 4; Paper No. 19 at 2. At the motions hearing, Thompson's counsel represented that if Gerstel were tried first, Thompson would testify that he was with Gerstel during the incident and never saw Gerstel strike Rowland. Mot. Hr'g 94:4-24, May 12, 2010.

Here, Gerstel and Thompson are not seeking to avoid trial with Mussmacher. At the motions hearing, Gerstel's counsel stated that, if Mussmacher were severed, Thompson and Gerstel want "to be tried together in a joint trial." *Id*. 118:3-7.[9] If tried together--but apart from Mussmacher--Thompson and Gerstel would take the stand and waive their Fifth Amendment privilege. If Thompson and Gerstel's refusal to testify at their joint

---

[9] When the Court indicated that either Thompson or Gerstel would likely be tried with Mussmacher, Thompson and Gerstel appear to have determined that trial together was preferable to trial with Mussmacher.

trial with Mussmacher indicates that they do not consider each other's exculpatory testimony to be necessary to their defenses. Thompson and Gerstel's conditional offers to testify for each other if severed from Mussmacher are not an appropriate basis for severance.

     D.   *Bruton* Issues

Gerstel argues that severance is required because the Government may present three statements by Mussmacher that implicate Gerstel in the assault on Rowland: (1) a statement to the Internal Investigation Division of the Baltimore City Police ("IID") on November 3, 2005; (2) a statement to IID on December 7, 2005; and (3) a proffer session with the FBI on September 23, 2008. Paper No. 75 at 2-3. The Government argues that severance is not required because the IID statements will not be admissible in the Government's case in chief[10] and incriminating material can be redacted from the proffer session statements. Paper No. 83 at 2-3.

When a statement by a non-testifying defendant inculpates a codefendant against whom the evidence is not admissible, severance may be required to prevent a violation of the

---

[10] The Government concedes that Mussmacher's IID statements are protected from admission during its case-in-chief by *Garrity v. New Jersey*, 385 U.S. 493, 500 (1967). *Garrity* held that a police officer's compelled statement procured under threat of removal from employment may not be used in a subsequent criminal proceeding. 385 U.S. at 497.

codefendant's Sixth Amendment right to confrontation. *Bruton v. United States*, 391 U.S. 123, 126 (1968). To avoid severance, the Court may (1) suppress the statement if it has little probative value against the defendant who made it, or (2) redact portions of the statement that inculpate the codefendant. *See Richardson v. Marsh*, 481 U.S. 200, 211 (1987). If the Government seeks to admit statements from Mussmacher's proffer session, the Court may either redact or suppress those statements to ensure that Gerstel is not prejudiced by them.

III. Gerstel's Motion to Suppress Statements

    A.    Background

    In early October 2008, Gerstel received a letter from the Civil Rights Division of the US Department of Justice ("DOJ"), inviting--but not requiring--him to appear before the Federal Grand Jury for the District of Maryland on October 8, 2008. Paper No. 28, Ex. A at 1.[11] The Government arranged a meeting with Gerstel and his attorney, Patrick Sheridan, before that appearance.[12] The parties did not discuss the "terms of engagement," i.e., whether statements made by Gerstel during

---

[11] The letter stated: "You are a target of this investigation and these grand jury proceedings may result in the filing of criminal charges against you." *Id*. It further advised Gerstel that, if he chose to appear and testify, anything he said could be used against him. *Id*.

[12] The parties dispute whether the Government or Sheridan requested the meeting. Compare Paper No. 28 ¶ 4 with Mot. Hr'g 83:11-25.

that meeting could be used against him.  Mot. Hr'g 21:9-21; 59:7-12.

On October 7, 2008, Gerstel and his attorney, Patrick Sheridan, met with FBI Special Agent Mia Winkley (nee Chester) and DOJ attorneys Jeffrey Blumberg and Forrest Christian at the United States Attorneys' Office.  Paper No. 28 ¶ 5; Mot. Hr'g 57:17-19.  During the discussion, Gerstel could not recall where Mussmacher had been standing in relation to Rowland when Gerstel entered the interrogation room at the police station.  Mot. Hr'g 76:6-12.  Christian assured Gerstel that the Government was "not going to hold [him] to any of this" and was "not trying to trip [him] up." *Id*. 76:13-18.  Later in the interview, Gerstel stated that he did not strike Rowland on the back.  Mot. Hr'g 78:22-79:6.  This denial is the basis for the charge against Gerstel in Count Three.

B.   Statements Made to Government Officials

Gerstel moved to suppress the statements he made during his October 7, 2008 interview.  Paper No. 17.  He argues that his statements were involuntary because they were induced by the Government's assurance that the conversation would be "off-the-record" and "not be used against [him]."  Paper No. 17 ¶ 2; Paper No. 41 at 1.  The Government contends that no promises were made, and the parties never discussed a proffer agreement before the interview.  Paper No. 28 ¶ 7.

11

A statement made during a noncustodial interrogation may be involuntary under the Fifth Amendment and Due Process Clause if it was obtained by "threats or violence," "direct or implied promises," or "improper influence." *United States v. Braxton*, 112 F.3d 777, 780 (4th Cir. 1997).[13]

Gerstel relies on *United States v. Swint*, in which the Third Circuit suppressed "off the record" statements made by the defendant to DEA agents regarding a narcotics investigation. 15 F.3d 286, 288-92 (3d Cir. 1994).[14] The Government argues that,

---

[13] *See also Beckwith v. United States*, 425 U.S. 341, 347-48 (1976). Coercive government conduct is a necessary prerequisite to a finding of involuntariness. *Colorado v. Connelly*, 479 U.S. 157, 165 (1986). But an interrogation or interview need not be completely free from intimidation. *Braxton*, 112 F.3d at 782. To render statements involuntary, government coercion must cause the defendant's will to be "overborne" or his "capacity for self determination critically impaired." *United States v. Pelton*, 835 F.2d 1067, 1071-72 (4th Cir. 1987). Accordingly, voluntariness is a "totality of the circumstances" analysis, and the court may consider the characteristics of the defendant as well as the setting and details of the interview. *Haynes v. Washington*, 373 U.S. 503, 513-14 (1963); *United States v. Elie*, 111 F.3d 1135, 1143-44 (4th Cir. 1997). The Government bears the burden of proving by a preponderance of the evidence that statements made by a defendant were voluntary. *Lego v. Twomey*, 404 U.S. 477, 489 (1972).

[14] In *Swint*, at the DEA's request, the state authorities invited the defendant to the District Attorney's office on the assumption that he would be making only off the record statements regarding certain state charges against him. *Id*. at 290. After the defendant arrived, the DEA agents entered the meeting, confronted him with evidence of federal charges, and urged his cooperation. *Id*. Neither the defendant nor his attorney had been told that DEA agents would be present at that meeting or that statements made to those federal officials would not be considered part of the "off the record" proffer to state

unlike *Swint*, there was no coercion here because no one said the
conversation was "off the record,"[15] and Gerstel's counsel was
present throughout the interview.  The Government further
asserts that its normal practice is to set out *in writing* any
proffer agreement--which confers limited immunity on a defendant
for his truthful statements--*before* an interview.  Here, there
was no discussion of a proffer agreement, and even if such an
agreement had been entered, it would be irrelevant because the
Government believes that Gerstel's statements during the
interview were untruthful.

    The Government has shown that Gerstel appeared voluntarily
at the meeting.  It is undisputed that--even if proffer
agreements had been routinely given in similar situations--there
was no proffer agreement for this meeting.  Gerstel's belief
that his statements were "off the record" was unreasonable and
is unsupported by Christian's statements that the Government was

---

authorities.  *Id*. at 289.  The defendant's attorney was also
absent during the interview with the federal agents.  *Id*.  *Swint*
held that the Government had "used a coercive 'bait-and-switch'
technique, first by leading [the defendant] and his attorney to
believe [his] statements would not be used against him and then
by depriving [the defendant] of that protection without giving
him *Miranda* warnings."  *Id*.

[15]  At the motions hearing, Agent Winkley testified that neither
she nor the DOJ attorneys told Gerstel that his statements were
"off-the-record" or would not be used against him.  Mot. Hr'g
28:12-29:1.

"not going to hold [Gerstel] to any of this" and was "not trying to trip [Gerstel] up."

The motion to suppress Gerstel's statements made during the October 7, 2008 will be denied.

IV.  The Government's Motion in Limine to Allow Evidence of Mussmacher's Prior Bad Acts Under Fed. R. Evid. 404(b)

The Government seeks to introduce evidence that Mussmacher pepper sprayed Harry Grafton, who was restrained in his hospital bed, and then falsified a police report to justify and cover up his acts.  Paper No. 35 at 3.[16]  It contends that this 2003 incident is admissible under Fed. R. Evid. 404(b)[17] to show Mussmacher's motive, opportunity, plan, knowledge, intent, and absence of mistake to assault Rowland and cover-up his actions by making false statements in a police report.  Paper No. 35 at 5.  The Government further argues that the evidence is necessary to prove Mussmacher's state of mind, which is relevant to the charges against him.  *Id.* at 5-6.

---

[16]  The Government asserts that the Baltimore Police Department's Internal Affairs Division investigated this incident and charged Mussmacher for his use of force.  Paper No. 35 at 4.

[17]  Under Fed. R. Evid. 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."  But, such evidence may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]"  Fed. R. Evid. 404(b).

Mussmacher argues that (1) the Government's evidence is insufficient for a jury to reasonably conclude that Mussmacher used excessive force and filed a false report in 2003; (2) his alleged misconduct is inadmissible propensity evidence under Fed. R. Evid. 404(b) and is not probative of whether his use of force against Rowland was done with criminal intent; and (3) the probative value of the 2003 incident is substantially outweighed by the dangers of unfair prejudice under Fed. R. Evid. 403. Paper Nos. 37 & 40.

Evidence is admissible under Rule 404(b) if (1) relevant to an issue other than the general character of the defendant; (2) necessary to prove an element of the charged offense; and (3) reliable. *United States v. Hodge*, 354 F.3d 305, 312 (4th Cir. 2004). "Additionally, the probative value of the evidence must not be substantially outweighed by the danger that it will cause unfair prejudice." *Id*. (*citing* Fed. R. Evid. 403).[18] Rule 404(b) is an inclusionary rule; evidence of other crimes or acts is admissible unless it tends to prove only criminal disposition or propensity. *See United States v. Queen*, 132 F.3d 991, 994-95 (4th Cir. 1997).

Evidence of prior bad acts is reliable if a jury could reasonably find, by a preponderance of the evidence, that the

---

[18] Limiting jury instructions can provide additional protection to defendants. *Hodge*, 354 F.3d at 312.

act was committed by the defendant. *Huddleston v. United States*, 485 U.S. 681, 690 (1988); *United States v. Hadaway*, 681 F.2d 214, 218 (4th Cir. 1982).[19] In assessing this "minimal standard of proof," the court must consider all potential evidence, as "the sum of an evidentiary presentation may well be greater than its constituent parts." *Huddleston*, 485 U.S. at 690.

The Government proffers that Gretchen Hylton[20] and George Kirchenbauer[21] will testify at trial that they heard Grafton scream, entered his hospital room, and saw him restrained on the hospital bed. Paper No. 35 at 4.[22] Hylton will also testify that, after the incident, Grafton told her "I didn't try to grab [Mussmacher's] gun." Mot. Hr'g 88:24-25.[23] The Government

---

[19] To determine whether evidence of a prior bad act is reliable, the trial court does not weigh credibility or find that the Government has proved the conditional fact by a preponderance of the evidence. *Huddleston*, 485 U.S. at 690. Instead, the court need only conclude that there is sufficient evidence from which a reasonable jury *could* find by a preponderance that the defendant committed the prior act. *Id*.

[20] Hylton was Grafton's treating nurse at the hospital. Paper No. 35 at 3.

[21] Kirchenbauer was a security officer at the hospital. *Id*. at 4.

[22] At the motions hearing, the Government explained that Grafton is unavailable to testify because he is dead. Mot. Hr'g 88:5-6.

[23] The Government intends to introduce this statement under the "excited utterance" exception to the hearsay rule. Mot. Hr'g 89:2-6.

further contends that Mussmacher's report of the incident is an impossibility, i.e., Grafton could not have grabbed Mussmacher's gun and maintained his grip from his restrained position on the hospital bed. *Id*. 89:19-24; 90:13-15. Mussmacher argues that the testimony from Hylton and Kirchenbauer is insufficient because they arrived after his alleged use of excessive force and neither saw whether the use of pepper spray was precipitated by Grafton reaching for Mussmacher's gun. Paper No. 40 at 2-6.

At trial, the Court will determine the reliability and prejudicial effect of this evidence if the Government seeks to introduce it.

V.    Mussmacher's SEALED Motion to Dismiss the Indictment for Tainted Grand Jury Proceedings and Request for Disclosure of all Grand Jury Transcripts

A.    Motion to Dismiss the Indictment

Mussmacher has moved to dismiss the indictment for tainted Grand Jury proceedings under Fed. R. Crim. P. 6(e) and 12. Paper No. 43. He argues that Grand Jury testimony by Baltimore City Police Officer Adam Friedman,[24] and possibly other witnesses, improperly disclosed Mussmacher's state conviction

---

[24]  Testifying about the incident with Mussmacher and Rowland, Friedman stated: "my partner and I spoke about it and to Internal Affairs and through the end of the trial and after the trial and it became public record." Paper No. 43 at 2. Friedman also stated:  "There was an initial trial.  Mussmacher was found guilty and then during the time after he was found guilty we were all waiting for his departmental trial, his trial board, and he asked me have you heard anything and I was like no and I walked away." *Id*.

for hitting Rowland. Paper No. 43 at 5; Mot. Hr'g 100:17-

101:11. The Government argues that there was no impropriety in

admitting this evidence, and if improper, there is no evidence

of "gross purposeful deception by the prosecutor" that justifies

dismissal of the indictment. Paper No. 49 at 3-6.

At the motions hearing, the Government disclosed that

Friedman and other witnesses, and the Grand Jury instructions

referred to Mussmacher's conviction. Mot. Hr'g 105:13-15. A

cautionary instruction told the Grand Jury:

> that there was a state court trial of Gregory Mussmacher
> and that the state court trial resulted in Mussmacher being
> found guilty of assault and misconduct in office for his
> actions at the police station. He was acquitted for his
> actions at the scene. That decision was overturned, the
> conviction was overturned on appeal. And I tell you that
> not because it has any bearing whatsoever on what we may
> ask in the future or your decision in the future, but
> specifically because you may hear from witnesses that they
> gave prior testimony, that there was a prior trial, so I
> just want to make sure you understand there was a state
> court trial, but you're going to have to make an
> independent assessment based on what you hear from the
> witnesses here because it's a separate sovereign and an
> out-of-state court proceeding.

Mot. Hr'g Gov't Ex. 4, *United States v. Mussmacher* Grand Jury

Proceedings 5:11-6:6, May 28, 2008. Mussmacher argued that this

instruction was insufficient because it did not tell the Grand

Jury to ignore the prior conviction and was given almost a year

before the Indictment. Mot. Hr'g 110:1-7, 10-15.

"A defendant is entitled to dismissal of an indictment only

whe[n] actual prejudice is established." *United States v.*

*Feurtado*, 191 F.3d 420, 424 (4th Cir. 1999) (*citing Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988)). Prejudice may be established by "proof that the grand jury's decision to indict was substantially influenced, or that there is 'grave doubt' that the decision to indict was substantially influenced, by testimony which was inappropriately before it." *Id*.

Here, there is no evidence that the grand jury's decision was substantially influenced by Mussmacher's previous conviction in state court. The cautionary instruction properly informed the Grand Jury that it needed to "make an independent assessment based on what [was] hear[d] from the witnesses." It also explained that the state conviction had been overturned on appeal. Given the strong presumption of validity of grand jury proceedings, Mussmacher has not shown improper conduct by the prosecutors. *See Hamling v. United States*, 418 U.S. 87, 139 n.23 (1974).

The motion to dismiss the Indictment for tainted Grand Jury Proceedings will be denied.

B. Request for Disclosure of the Grand Jury Proceedings[25]

Mussmacher has requested disclosure of the remaining grand jury transcripts, including all witness testimony and instructions. Paper No. 43 at 10.

---

[25] The Government has provided the Grand Jury transcripts of Baltimore City Police Officers Adam Friedman and Brandon Echevarria. Paper No. 49 at 2.

Under Fed. R. Crim. P. 6(e)(3)(E)(ii), "[t]he court may authorize disclosure . . . of a grand-jury matter . . . at the request of a defendant who shows that a ground *may* exist to dismiss the indictment because of a matter that occurred before the grand jury." The moving party has the burden to establish "a strong showing of particularized need for grand jury materials before any disclosure will be permitted." *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 443 (1983). To obtain a grand jury transcript under Rule 6(e), a party "must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." *Douglas Oil Co. of Cal. v. Petrol Stops NW*, 441 U.S. 211, 222 (1979).

The Government has disclosed that several witnesses referred to Mussmacher's conviction and provided the cautionary instructions given to the Grand Jury; as the information that Mussmacher seeks has already been given, early disclosure will not be ordered.

VI. Mussmacher's Motion in Limine to Allow Government Admission

A.   Background

After Mussmacher's state prosecution, the Criminal Section of the Civil Rights Division of DOJ closed its case against him.

Paper No. 22 ¶ 1; Paper No. 29 at 2.  On February 24, 2006,

Criminal Section Chief Mark Kappelhoff sent Mussmacher a letter,

stating in part:

> After careful consideration, we conclude that the evidence
> does not establish a prosecutable violation of the federal
> criminal civil rights statutes.  Accordingly, we have
> closed our investigation.  Please be advised that our
> conclusion in this matter does not preclude other
> components of U.S. Department of Justice from taking
> action, where appropriate, under their separate enforcement
> authority.

*Id.*, Ex. 1.  The Government contends that this "form letter"

misstated the Criminal Section's actual reason for closing

Mussmacher's case, as that decision was based solely on the

state conviction rather than its investigation.  Paper No. 29 at

2.

    B.   Relevancy

Mussmacher has moved in limine to admit this letter as a

Government admission under Fed. R. Evid. 801(d).  Paper No. 22.

The Government argues that this letter is irrelevant,

inadmissible hearsay, and likely to mislead and confuse the

jury.  Paper No. 29 at 3.

Admissible evidence has a "tendency to make the existence

of any fact that is of consequence to the determination of the

action more probable than it would be without the evidence."

Fed. R. Evid. 401.  The Government contends that the letter is

irrelevant because it contains no facts and does not accurately

state the Criminal Section's rationale for closing Mussmacher's

case.  Paper No. 29 at 3.  It further argues that the language

of the letter is analogous to a "prior acquittal on charges

arising out of the same incident," which courts consistently

find are irrelevant because a prior acquittal "does not prove

innocence."  *United States v. Smith*, 981 F.2d 1252, 1992 WL

369904, at *2 (4th Cir. Dec. 15, 1992)(*quoting United State v.*

*Kerley*, 643 F.2d 299, 300-01 (5th Cir. 1981)).[26]

Here, the letter states the Criminal Section's belief that

there was insufficient evidence to prosecute Mussmacher.  But

that belief does not bear on Mussmacher's guilt or innocence or

tend to prove or disprove an element of the charges against him.

Because Mussmacher has not proffered a theory of relevance, his

motion *in limine* to admit this letter will be denied.

VII. Motion to Dismiss Grand Jury Indictment

Challenging the constitutionality of 28 U.S.C. § 1863(b)

(6)(B) and its application in this District, Mussmacher has

moved to dismiss the indictment for improper jury selection

---

[26] *See also United States v. De la Rosa*, 171 F.3d 215, 220 n.18
(5th Cir. 1999)(noting that a prior acquittal does not prove
innocence); *United States* v. *Sutton,* 732 F.2d 1483, 1493 (10th
Cir. 1984) ("[A] judgment of acquittal is hearsay, and there is
no exception to the hearsay rule for judgments of acquittal."),
*cert. denied,* 469 U.S. 1157 (1985); *Prince* v. *Lockhart,* 971 F.2d
118, 122 (8th Cir. 1992) (describing "general rule" that "a
judgment of acquittal is not usually admissible" and citing
cases).

procedures and violation of the Sixth Amendment.  Paper No. 25
at 1-3.  The Government has opposed this motion.  Paper No. 30.

A.   Section 1863(b)(6)(B) of the Jury Selection and
     Service Act

Mussmacher argues that Section 1863(b)(6)(B) of the Jury
Selection and Service Act of 1968, which exempts "members of the
fire or police departments of any State . . . or any subdivision
of a State" from federal jury service, violates his Sixth
Amendment right to a grand jury drawn from a fair cross section
of the community.  28 U.S.C. § 1863(b)(6)(B).

Under the Sixth Amendment, criminal defendants are entitled
to a grand jury "selected at random from a fair cross section of
the community." *United States v. Terry*, 60 F.3d 1541, 1543
(11th Cir. 1995)(*citing Taylor v. Louisiana*, 419 U.S. 522, 528-
30 (1975)).  To establish a *prima facie* case of unfair
selection, Mussmacher must show: (1) the group allegedly
excluded is a distinctive group in the community, (2) the
group's representation on grand jury venires is not fair and
reasonable in relation to their population in the community, and
(3) the under-representation is due to the systematic exclusion
of the group in the jury selection process.  *Truesdale v. Moore*,
142 F.3d 749, 755 (4th Cir. 1998)(*citing Duren v. Missouri*, 439
U.S. 357, 364 (1979)). *See also Terry*, 60 F.3d at 1544; *United
States v. Blair*, 493 F. Supp. 398, 406 (D. Md. 1980).

A "distinctive" group has (1) some quality or attribute which defines and limits them as a group; (2) a cohesiveness of attitudes, ideas, or experience, which distinguishes them from the general population; and (3) a community of interests, which may not be represented by other social segments. *Blair*, 611 F.2d at 406 (*quoting United States v. Test*, 550 F.2d 577, 591 (10th Cir. 1976)). Although groups identified by inherent characteristics--such as race, ethnicity, and gender--have been recognized as "distinctive,"[27] professional groups--such as lawyers, doctors, and engineers--are not usually found to be "distinctive"[28] for the fair cross section requirement. Because Mussmacher has not identified "cohesiveness of attitudes" or a "community of interests" shared by police officers or fire fighters that distinguish those groups from the general population, he has failed to show that they are distinctive groups.

This result is consistent with other courts, which have held the exemptions in Section 1863(b)(6) do not violate the fair cross section requirement. *See Terry*, 60 F.3d at 1544; *Government of Canal Zone v. Scott*, 502 F.2d 566, 569 (5th Cir.

---

[27] *See Test*, 550 F.2d at 591.

[28] *See United States v. Marrapese*, 610 F. Supp. 991, 1003 (D.R.I. 1985).

1974).[29]  As members of the police and fire departments have not

been shown to be "distinctive" groups, Mussmacher's motion to

dismiss for violation of the fair cross section requirement will

be denied.

    B.   District of Maryland Juror Qualification Questionnaire

    Mussmacher challenges the questionnaire's wording of

Question Nine, which asks whether a person is "employed on a

full time basis as a . . . [m]ember of any governmental police

or regular fire dep[artment] (not including volunteer or non-

governmental departments)."  *See* Paper No. 25 at 2-3, Ex. 3.  He

argues that this question is unconstitutionally over-inclusive

because it exempts federal law enforcement officers, which are

not barred from jury service by Section 1863(b)(6)(B), and

deprives him of a fair cross-section of his community on the

grand jury panel.  *Id*. at 2-3, 7.

    Mussmacher also argues that the questionnaire is under-

inclusive because it limits the exemption to full-time employees

even though Section 1863(b)(6)(B) exempts *all* members of the

fire or police departments regardless of whether they are

---

[29]  Although the Fourth Circuit has not specifically addressed
the question, courts have long recognized that "certain
occupations may be categorically excluded from jury duty 'on the
bona fide ground that it [is] for the good of the community that
their regular work should not be interrupted.'"  *Scott*, 502 F.2d
at 569 (*quoting Rawlins v. State of Georgia*, 201 U.S. 638, 640
(1906)).

employed on a full-time or part-time basis.[30]  The Government

opposes this.  Paper No. 30 at 7-12.

### 1.  Sixth Amendment Challenge

The 1968 Jury Selection and Services Act requires United

States District Courts to "devise and place into operation a

written plan for random selection of grand and petit jurors that

shall be designed to achieve the objectives of [the Act]."  28

U.S.C. § 1863(a).  Mussmacher's Sixth Amendment challenge to the

juror questionnaire must show a *prima facie* violation of his

right to a fair cross-section of the community on his grand jury

panel.  *See supra* Part II.A; *see also United States v.*

*Henderson*, 409 F.3d 1293, 1305 (11th Cir. 2005).  The Government

may rebut a *prima facie* showing "if 'it may be fairly said that

the jury lists or panels are representative of the community,'

and that 'a significant state interest is manifestly and

primarily advanced by those aspects of the jury selection

process . . . that result in the disproportionate exclusion of a

distinctive group.'"  *Henderson*, 409 F.3d at 1305 (*quoting*

*Duren*, 439 U.S. at 367-68).

On a similar challenge to the constitutionality of a juror

questionnaire--which exempted federal, part-time, and private

---

[30]  For example, a part-time Maryland State Police Officer would
have to answer "no" to Question Nine even though he is
statutorily exempt from jury service under Section
1863(b)(6)(B).

law enforcement officers from jury service--the Eleventh Circuit

held that the "jury lists or panels [were fairly] representative

of the community" because those officers composed only a small

fraction of the jury pool.  *Id*.  The court further held that

this exclusion advanced the significant state interest of

"allowing police officers to perform their duties without the

interruption of jury service."  *Id*. (internal quotation

omitted).  Accordingly, "even assuming . . . a *prima facie* Sixth

Amendment violation," the court held that the exemption of these

officers was constitutional.  *Id*. at 1306.

The Court adopts the Eleventh Circuit's analysis.[31]

Mussmacher has not stated a *prima facie* case because he has not

shown that federal law enforcement officers are a distinctive

group.  Even assuming a *prima facie* case, Mussmacher's objection

to the District of Maryland's questionnaire fails because the

exemption of federal law enforcement officers likely resulted in

the exclusion of few people and advances the significant

interest in providing uninterrupted public safety services to

---

[31]  *See Duren*, 439 U.S. at 370 (recognizing that "most
occupational and other reasonable exemptions may inevitably
involve some degree of overinclusiveness or underinclusive-
ness"); *United States v. Cecil*, 836 F.2d 1431, 1445 (4th Cir.
1988)("[T]he Constitution does not require that the juror
selection process be a statistical mirror of the community[.]").

Maryland's citizens.[32]  The juror questionnaire used in this

District did not violate Mussmacher's Sixth Amendment right to a

representative grand jury panel.

2.    Section 1863(b)(6) Challenge

Mussmacher also contends that this District's questionnaire

violates § 1863(b)(6)(B) by exempting federal law enforcement

officers but not part-time employees of state and local fire and

police departments.  Paper No. 25 at 2-3, 7-8.

Under § 1861 of the Jury Selection and Service Act, "all

litigants in Federal court have the right to grand and petit

juries selected at random from a fair cross section of the

community in the district or division wherein the court

convenes."  28 U.S.C. § 1861.  Section 1867(a) provides that a

criminal defendant may move to dismiss the indictment or stay

the proceedings for a "substantial failure" to comply with that

provision.  28 U.S.C. § 1867(a).[33]

---

[32]  *See id.* ("[I]t is unlikely that reasonable exemptions, such
as those based on . . . community needs would pose substantial
threats that the remaining pool of jurors would not be
representative of the community'"); *Cecil*, 836 F.2d at 1446
(recognizing that the state may deliberately exclude certain
groups from juries if it has "a very special reason").

[33]  To obtain relief, a criminal defendant must show "substantial
noncompliance," which requires more than a "mere technical
deviation[]" from the Act.  *United States v. Meredith*, 824 F.2d
1418, 1424 (4th Cir. 1987).  *Henderson* held that the exclusion
of federal, part-time, and private officers from the jury panel
did not "constitute a significant enough impact on the

Mussmacher has failed to comply with § 1867 because he did not provide an affidavit showing substantial failures to comply with the Act. There is also no evidence that the Act's purpose--to prevent discrimination based on "race, color, religion, sex, national origin, or economic status"[34]--has been subverted by this District's jury selection process. When errors in the jury selection process do not frustrate the purposes of the Act, "a court should be hesitant to order the drastic remedy of the dismissal of the indictment[]." *United States v. Carmichael*, 560 F.3d 1270, 1277 (11th Cir. 2009)(*quoting Bearden*, 659 F.2d at 609). Mussmacher's motion to dismiss the indictment for improper jury selection procedures and violation of the Sixth Amendment will be denied.

---

composition of an average jury to violate the Act." *Henderson*, 409 F.3d at 1306.

A motion to dismiss the indictment on this basis must include, *inter alia*, "a sworn statement of facts which, if true, would constitute a substantial failure to comply with the provisions of" the Act. *Id.* § 1867(d). Because the procedures prescribed in § 1867 are "the exclusive means by which a person accused of a Federal crime . . . may challenge any jury on the ground that such jury was not selected in conformity with the provisions of" the Act, a motion that fails to comply with those procedures must fail. *Id.* § 1867(d); *see also United States v. Rodriguez*, 588 F.2d 1003, 1009-10 (5th Cir. 1979); *United States v. Jones*, 480 F.2d 1135, 1139 (2d Cir. 1973).

[34] 28 U.S.C. § 1862; *see also United States v. Bearden*, 659 F.2d 590, 609 (5th Cir. 1981).

VIII. Government's Motion in Limine to Preclude Any Reference to
      Polygraph Examinations of Any Witness or Defendant

The Government moved *in limine* to "preclude any reference

to the polygraph examinations of any witness or defendant."

Paper No. 37.  It is well-established that the fact that a

witness has taken a polygraph examination and the results of

that examination are *per se* inadmissible in criminal

prosecutions.  *United States v. Prince-Oyibo*, 320 F.3d 494, 501

(4th Cir. 2003).  There is a limited exception when testimony

about a polygraph examination "is not offered to prove the truth

of the polygraph result, but instead is offered for a limited

purpose such as rebutting a defendant's assertion that his

confession was coerced."  *United States v. Blake*, 571 F.3d 331,

346 (4th Cir. 2009)(*quoting United States v. Allard*, 464 F.3d

529, 534 (5th Cir. 2006)).  Accordingly, the Government's motion

must be granted.[35]

IX.  Mussmacher's Motion to Compel Production of Rough Notes and
     Emails on a Specific Topic

     A.   Background

After each interview Agent Winkley conducted in the FBI's

investigation into Rowland's assault, she used her rough notes

---

[35] Mussmacher has argued that the statements made during a
polygraph examination--unlike the fact or results of the
examination--may be admissible at trial for impeachment and
other purposes.  Paper No. 39 at 3-6.  But the Court will not
address the admissibility of those statements because the
Government moved to exclude only references to the results and
fact of the examination.

to write an FBI-302 report. *See* Paper No. 80, Ex. 1; Mot. Hr'g 36:12-16. The Government produced these 302s to the Defendants but did not provide the rough notes. *See* Paper No. 80 at 2. At the motions hearing, Agent Winkley testified that (1) the 302s of her October 7, 2008 interview with Gerstel may not include all the information contained in her notes, and (2) she had retained her notes from that interview. Mot. Hr'g 36:16-25.

    B.   Motion to Compel Production of Interview Notes

Because Agent Winkley indicated that her 302s may have omitted facts from her interview notes, Mussmacher seeks her notes from the 60 interviews conducted by FBI agents[36] in connection with this case. Paper No. 80 at 1-2. Mussmacher particularly wants notes from November 22 and December 7, 2009 interviews with Rowland, which were memorialized in a 302 dated December 8, 2009. Paper No. 80, Ex. 2. That report states that DOJ attorneys told Rowland that "the DOJ could not and would not offer anything to [him] in exchange for his testimony at trial," but it does not record Rowland's response to that comment. *Id*. Arguing that the December 8, 2009 FBI-302 might be incomplete, Mussmacher contends that he is entitled to review Agent Winkley's rough notes and "all Government emails or other communication relating to matters addressed in [that] FBI 302"

---

[36]  Agent Winkley conducted all the interviews except one on November 4, 2005, conducted by FBI Special Agent Carrie I. Dayton. *See* Paper No. 80, Ex. 1.

for evidence of a "deal" between Rowland and the Government. *Id.* at 2. The Government argues that Agent Winkley's interview notes and email correspondence between Government officials are not discoverable under *Jencks*, *Brady*, *Giglio*, or Fed. R. Crim. P. 16. Paper No. 94 at 1.

On motion of the Defendant, after a Government witness has testified, the *Jencks* Act requires the Government to produce "any statement . . . of the witness in [its] possession . . . which relates to the subject matter as to which the witness has testified." 18 U.S.C. § 3500(b).[37] "The investigative notes of a government agent, made in the course of interviewing witnesses, which are later incorporated in the agent's formal 302 report, are not statements within the meaning of Section 3500(e)(1)." *United States v. Hinton*, 719 F.2d 711, 722 (4th

---

[37] The Act defines "statements" to include: (1) written statements made and adopted or approved by the witness, (2) a recording or transcript which is "substantially verbatim" and made contemporaneously with the witness's oral statement, and (3) a statement made to a grand jury. 18 U.S.C. § 3500(e). These "*Jencks* materials" are routinely produced to defendants shortly before trial. *See, e.g., United States v. Lewis*, 35 F.3d 148, 151 (4th Cir. 1994).

Cir. 1983).[38]  Accordingly, Mussmacher may not compel production

of Agent Winkley's interview notes under the *Jencks* Act.[39]

Under *Brady v. Maryland*, the Government must disclose

material evidence favorable to the accused upon request. 373

U.S. 83, 87 (1963).  *Giglio v. United States* requires the

Government to disclose evidence tending to impeach or discredit

a Government witness.  405 U.S. 150, 154-55 (1972).  Here, the

Government asserts that it has reviewed the relevant files and

disclosed all *Brady* and *Giglio* materials.  *See* Paper No. 94 at

1-2, 4.  Generally, the district court will not "conduct a

general *Brady* rule *in camera* search through files of the

prosecutor when the prosecutor ha[s] assured the district court

that all possible exculpatory materials ha[ve] been produced."

*United States v. Holmes*, 722 F.2d 37, 41 (4th Cir. 1983).[40]

---

[38]  Similarly, § 3500(e)(2) does not require production of a
government agent's interview notes that "merely select[]
portions, albeit accurately, from a lengthy oral recital."
*United States v. Roseboro*, 87 F.3d 642, 645 (4th Cir. 1996)
(*quoting United States v. Palermo*, 360 U.S. 343, 352 (1959)).

[39]  Further, Rule 16(a)(2) "does not authorize the discovery or
inspection of statements made by prospective government
witnesses except as provided in 18 U.S.C. § 3500."  Fed. R.
Crim. P. 16(a)(2). *See also United States v. Duffy*, 30 Fed.
Appx. 240, 246 (4th Cir. 2002).

[40]  "The district court . . . generally does not know the
government's theory of prosecution nor what possible defense
might be available to defendants, and thus it is unlikely that
it would recognize in a general in camera search anything but
the most obvious exculpatory data."  *Holmes*, 722 F.2d at 41.
However, the court may review the disputed materials *in camera*

Mussmacher asserts that he needs Agent Winkley's interview notes because (1) she testified that some of her notes might not be included in her FBI-302 reports, (2) the statements by DOJ attorneys to Gerstel that they were "not going to hold [him] to any of this" and were "not trying to trip [him] up" were not included in the October 7, 2008 FBI-302 report, and (3) the notes from Rowland's conversations with Agent Winkley in November and December 2009 may contain evidence of a "deal" for Rowland's testimony that was not included in the 302s. Mussmacher is not entitled to Agent Winkley's interview notes absent an indication that her notes contain material exculpatory evidence that was omitted from the 302s. Mussmacher has provided a specific basis for the production of Agent Winkley's notes from two of the more than 60 FBI interviews in this case: the interview with Guy Gerstel on October 7, 2008 and the interview--and related telephone conversations--with Benjamin Rowland on November 22, 2009 and December 7, 2009. Accordingly, the court will order an *in camera* review of Agent Winkley's notes related to those 302s.[41]

---

if the defendant establishes a basis for his claim that they might contain undisclosed exculpatory evidence. *See Pennsylvania v. Ritchie*, 480 U.S. 39, 58 n.15 (1987).

[41] As the Government asserts that is has met its disclosure obligations and Mussmacher has failed to provide a cognizable basis for "all Government emails or other communications

III. Conclusion

For the reasons stated above, the Defendants' motions to adopt other defendants' motions will be granted in part and denied in part and their motions to sever will be denied; Gerstel's motion to suppress will be denied; Mussmacher's motions to dismiss the Indictment and to suppress will be denied; the Government's motion *in limine* to exclude evidence of the fact and results of polygraph exams will be granted; and Mussmacher's motion to compel will be granted in part and denied in part. The Government's motion *in limine* to admit evidence of prior bad acts by Mussmacher will decided at trial.

June 3, 2010                    _____/s/_____
Date                            William D. Quarles, Jr.
                                United States District Judge

---

relating to matters addressed in the FBI 302 report" created on December 8, 2009, that request will be denied.